at trial. Carl Jones was peacefully having a drink at a bar called the Majestic in Hartford when a fellow named Saez comes in the bar and starts shooting. Mr. Saez shot and killed a fellow named Treadwell, shot two other people, and it's unclear from the evidence at trial exactly how many shots he fired. While Mr. Treadwell is lying on the floor, presumably dying, my client, who's again standing at the bar, reaches down and Mr. Treadwell somehow also had a gun, took the gun from Mr. Treadwell, and having watched Mr. Saez shoot indiscriminately it seemed also, into the bar. He went after Mr. Saez and shot at him. Mr. Saez did And when he shot at him, there were other people around. And there were other people. I saw him in the video reaching around people. That's correct. The video shows, there was a video and it showed that. So for you bear the burden of, to prove the five elements of self-defense, can you tell me what evidence or analysis you have with respect to the fifth prong, the he didn't have the firearm any longer than absolutely necessary? Yeah. The jury did not find the justification in defense, the defense of himself or others. And I think probably primarily because of the fifth prong, as Your Honor says, because there was, in fact, we went to pretty much, on the eve of trial, I think it was, we went by a convicted felon, and then somehow the gun turned up, turned up later. But the issue I wanted to bring to the Court's attention here has to do with the sentencing issue and whether or not Mr. Jones deserved the imposition of a sentence for a guideline range for a premeditated murder. As Your Honors know, in this circuit it's held that in order to apply that guideline, you must have, you must have a premeditated murder. And you must find with the predominance, proponents of the evidence that Mr. Jones actually intended to kill his victim. And that's why I started with the facts of the case. There's no evidence whatsoever that he intended to kill Mr. Saez. In fact, Mr. Saez retained the weapon, and it was found in a pot, plant pot, flower pot, outside the club after Mr. Saez got outside the club. So for all Mr. Jones knew, Mr. Saez was still a very dangerous person. Now, there's at closing the you know, he may have been a dangerous person, and that doesn't mean that you necessarily can go shoot the person. You know, that's what I'm having problems with the timing of this. If the self-defense is out of the picture, then you're just dealing with your client shooting the Saez. Right. And shooting him presumably from behind and in a crowded hallway or a crowded area. Right. And why isn't taking the gun from Treadwell and then going to, going to, going to shoot, why isn't that sufficient for premeditation? Well, there's, there's a couple of different reasons. One is that the evidence in this case actually could have led to one of two, I suppose, implications. One would be, as the government argued at closing argument, for the first time in the trial, the evidence in this case actually could have led to one  of two implications. The first was that it was retaliation. The closing argument, the government says, well, this was a clear case of retaliation. Mr. Jones, my client, picked up the gun from the dying Mr. Treadwell and went after Mr. Saez to retaliate for the murder. That's just sheer speculation. It's not based on any evidence whatsoever in the case. The other possible implication is that my client, maybe not being the smartest fellow in the world, saw the shooting, stood there, witnessed the entire thing, and, and saw Mr. Saez with a loaded weapon which, for all he knew, for all any of us knew, it was either reloaded or had more bullets in it. The evidence in the trial was unclear as to how many shots were actually fired at the Majestic. The police, it was a nine-millimeter gun. The police found five shells in the club. They found another shell still in the chamber of the weapon when Mr. Saez dumped it outside the club. Your client pursued the victim into the next room. So, I mean, if people were in danger, they were in danger in the next room. And why isn't there a fair assumption that the person who was killed was, was running away? And that, and that your client took a gun that he didn't have to begin with and grabbed it in order to pursue somebody in the next room? Why isn't that premeditated? Well, we don't know, we don't know what his intention was. There's no proof of what his intention was. We don't know what he did. The act is pretty good, pretty clear. You know, sometimes you have to infer the intention from the act itself. It could be, a lot of things could be inferred. And there's, there's case law in this circuit also where someone is, shot someone chasing them also in the leg. Is that intent to kill? In fact, Mr. Caldwell, Mr. Saez didn't live. If my client was either a pretty poor shot or maybe he just didn't have that intent. He missed an artery. He missed an artery, yes, sir. He missed anything substantial. But I do think it's, it was a substantial jump for the court to have imposed those guidelines to, to bring it up to, to offense level 33 for premeditated murder. We believe that this is a case that, that deserved a much lower, a much lower guideline range. But there was a statutory cap of 120 months. Yes, that's right. And even without the premeditation, the guideline would have been 135, minimum of 135 months, right? In other words, the guideline, the original guideline was high because of the premeditation. But even so, even if you take the premeditation out of it, correct me if I'm wrong, but as I recall it, you'd still have a guideline that would exceed the cap of 120 months, which makes sense. I don't, I don't agree, Your Honor. I think if you take out the premeditation, and the government's done this, this math in its memo too, and we talked about it at trial, the appropriate guideline range was 78 to 97 months. I see. And so that, that is probably what the court should have imposed, at least for a guideline range. That's not to say the court had to impose a guideline range, of course.  Okay. Well, he was, he was sentenced to 120 months, right? But he was sentenced to the max, statutory max, which was 10 years, 120 months. Yes. The actual guideline range would have, well, as probation interpreted it, would have put it somehow in the triple, triple, three times higher than the statutory max.  I have, first degree murder would have been 262 to 327.  Second degree murder, 135 to 168, according to me, according to my notes here. Yes, Your Honor, that's, I agree. All right. Anything further, Your Honors? I'll, I'll. Do you want to just speak on the obstruction? Well, you know, the obstruction is, is, is something that we really did waive at trial. Mr. What happened here in the obstruction issue was, was the witness list. Mr. Jones turned the witness list apparently over to Mr. Torres. Whatever Mr. Torres did was on Mr. Torres and doesn't constitute obstruction. But as we discussed at, at sentencing, Mr. Jones also went on, I think it was Facebook, and also himself participated in expounding upon why persons who might have been called to testify should, should not do so.  You can see that you waived it. Is that right?  Did I hear you say you waived it? Yeah. Okay. That's what I was trying to get at. Okay. Thank you. Thank you, Your Honor. Your Honors, good morning. May it please the Court, my name is Alexis Feierlein. I'm an assistant United States attorney with the District of Connecticut. Based on the discussion that you just had with the defense, it sounds like the defense is conceding both the sufficiency issue and the obstruction of justice enhancement issue. So I'm going to focus my remarks, unless Your Honors have further questions for me, on those issues on the premeditated murder component before Your Honors today. And Your Honor, the dispositive, you know, facts, or dispositive points with respect to the application of the murder first guideline in this case, you know, is two points. First, the extraordinarily deferential standard of review applied in this case. And secondly, the video evidence that does exist here as well as to the shooting that occurred at the Majestic nightclub. And that video evidence is quite striking in this case. You know, Mr. Jones was not innocently sitting by at the bar. Can you go back to the standard of review? Yes, Your Honor. And is it different between reviewing intent and premeditation findings? Are they the same? No, Your Honor. I think it's the same standard of review. Because we're dealing with a factual dispute, it's clearer review. So, Your Honors, you would affirm unless you were to find that the district court, you know, lacked any plausible facts in support of its finding and application of the murder first guidelines in this case. And so even if Your Honors, you know, maybe personally had a different view of the facts, you would still err in the side of affirming, you know, the view, the decision of the district court, so long as there was some factual basis of the record. And here there is ample support in the record for using the cross-reference to the murder one guidelines in this case. When you look at the totality of the circumstances of this shooting, Mr. Jones was not an innocent bystander. When Judge Williams went to sentence him, he had the full context before him that this was a Los Salidos far. Mr. Jones was a Los Salidos enforcer who that evening had been watching a fight between his president, Mr. Treadwell, and another Los Salidos member, Mr. Saez, over whether Mr. Saez had brought a rat to the bar. And Mr. Treadwell's dissatisfaction with a rat or an informant having been brought to a Los Salidos club. He watched that dispute play out over the course of the evening, and then he watched his president being shot by Mr. Saez. This was not a gunman who randomly came into this club, waving a gun, shooting at random people. It was a targeted shooting. And the video of that shooting is quite striking. While there are several people who hit the ground or start fleeing when the bullets start going, Mr. Jones is one of the few people, if not the only people, who stands completely still, through it all, serving the scene, watching what happens next. Including Mr. Saez, once he has shot Mr. Treadwell, putting the gun inside his jacket, and then leaving with the fleeing crowd. It is at that point, a very cool, calm, collected Mr. Jones reaches down to receive his fallen president's gun, and then pursues Mr. Saez. And when he finds Mr. Saez, not only is he unarmed with his gun stowed away... Okay, I'm sorry. Yes, Your Honor. One of the things I'm trying to figure out is the conflation of premeditation and intent. If we find that the premeditation finding was erroneous, but not the intent finding, what happens? Your Honor, at the end of the day... Presumably he didn't know this person was going to be shot, right? So the premeditation is a hard road for you guys to be traveling on. I think it's a closer issue, perhaps, Your Honor, than the intent to kill point. Let's split them up. Why don't you first tell me what happens if we think that the premeditation part was wrong, but we are with you on intent. What do we do? Your Honor, you would still affirm because Judge Williams made amply clear at the sentencing that regardless... Because he knew that the guidelines were a hotly contested issue and were hotly in dispute. And he made amply clear at the sentencing that regardless of the guidelines calculation, he would impose a sentence of 10 years of imprisonment in this case. And this Court has made clear that in these circumstances where regardless of the guidelines calculation, the Court would impose the same sentence, it's harmless error at the end of the day. And so... Let me just be clear. Just the intent charge without premeditation, that's still a guideline that's above, minimum of which is above the 120 months, right? Correct, Your Honor. It would be the 135 to 168 range. That's what we're focusing on. Yes. Yes, Your Honor. And I think one telling thing, too, that comes from the sentencing is Judge Williams did remark multiple times that Mr. Jones was a beneficiary of the 10-year statutory cap in this case. Because Judge Williams made clear that from his perspective, looking at this facts, having sat through this trial, that this was an intentional and deliberate and retaliatory murder that was being attempted in this case. And that a 10-year or more sentence was amply warranted here. And under those circumstances, even if there were an error in the guidelines calculations, Your Honors, it was still a form under a harmless error standard under those factual honors. But just briefly, with respect to the premeditated component, Your Honor, I agree it's a closer issue, but I would point you to United States v. Mulder at 273 at 3rd 91, where this court, again, emphasized that the length of time of premeditation is not material. And as we discussed in our break, the sand instruction emphasizes that what's really important is that the defendant had sufficient time to be fully aware of what he intended to do. And so when you watch that video and you see how cool, calm, and collected Mr. Jones is, that helps support Judge Williams' finding of premeditation. So do other facts in the record, such as those about Mr. Jones being a low-solidus enforcer and having a prior assault warrant conviction involving a firearm. I think that gives Judge Williams a sense of who this individual was and why, even with this short period of time, he would be able to form that requisite premeditation mental state as required here. But again, that might be grist for the mill, given the harmless error standard that would apply in this case as well. My question would be, what was the premeditation focused on? And when was it? I mean, was it when he raised his hand, when he raised the gun to shoot, or was it back when he left the bar to get the gun from Treadwell? He didn't have to go back, Your Honor, to get the gun from Treadwell because Treadwell was in front of him. Okay. But it's interesting. When you watch the video, Your Honor, even as the fight is escalating between Mr. Ciz and Mr. Treadwell, it's interesting because you do see Mr. Jones quite clearly on the video talking to one of his friends and pointing out the fight, and you see him locked in on the fight that's unfolding. And like I said, when everybody else hits the ground in his swing, he is locked in on the shooting that has just occurred.  And I would contend that in that moment, as an enforcer for the Los Angeles whose president is down, he's calculating from that moment about what to do next. Right. But that's not premeditation. That moment has not been. I mean, there's meditation going on, presumably. It's not the usual kind that you and I might be used to. But it's the premeditation of the murder that is concerning to me, and not just the fact that he's witnessing things and hasn't at least made up his mind about what he's going to do about it. Well, Your Honor, but he doesn't need to have an elaborate plan. You know, it doesn't need to be an elaborate assassination plot. He just needs to have a cool mind sufficient that he knows what he's going to do and has full awareness of what he's about to do. And so, you know, it's not as though he grabs the gun and then in a second shoots. There is time for him to process what he's doing as he grabs the gun, he hunts down amidst this crowd, this throng of people that are pushing to get out of the club. He has to find and locate Sayers. And you see him sort of bobbing and weaving, looking for him, and then reaching up with the gun, with his arm, to find and make sure he is targeting among this throng trying to hit the right person from behind as he's at that exiting door. And I'd say all those steps together, you know, that's sufficient time for him to know what he's doing. And to consciously, too, be shooting into a crowd. You know, the PSR, the undisputed fact show, a crowd, a throng of over a dozen people, right? He had plenty of moments to decide, maybe I shouldn't be doing this. But he didn't. He kept pursuing this line of decision making. But again, you know, I think there are facts to support Judge Williams' application of this cross-reference. But even if Your Honors were to disagree, harmless error still applies here. So unless Your Honors have further questions for me, I will rest on a brief and ask that you affirm the decision of the lower court. Thank you. Thank you. Do you have one more minute? No. Okay. Thank you. So that concludes our cases being argued.